FIRST OF AMERICA BANK-OAKLAND MACOMB, NA v BROWN

Docket No. 89186. Submitted December 10, 1986, at Detroit. Decided February 18, 1987.

John A. and Pamela A. Brown obtained a $55,000 loan secured by a second mortgage on their home with First of America Bank-Oakland Macomb, N.A. Standard Federal Savings and Loan Association held the underlying mortgage. The Browns failed to make any payment on the second mortgage, and First of America foreclosed on the property. A sheriff's sale was held and First of America bid for and purchased the property for $34,742.32. The Browns owed the bank $70,391.55 in principal and interest. The bank's bid was based on a $110,000 appraisal of the home minus the costs of the sale, the outstanding tax lien of $10,050.15, and the amount owing on the underlying mortgage, which the bank believed to be $65,000. Shortly after the sale, Standard Federal foreclosed on its mortgage, and First of America learned then that the Browns' outstanding debt to Standard Federal was $81,821.74. A second sheriff's sale was held, at which time the amount owed to Standard Federal had increased to $90,400. Standard Federal bid and purchased the property for $91,466.12. The property was later sold for $84,-900. First of America filed suit against the Browns in Oakland Circuit Court to recover the $35,649.23 deficiency on its promissory note, as well as interest. The only issue at trial was the appraised evaluation of the property at the time of First of America's foreclosure sale. The court, Robert C. Anderson, J., granted judgment to the bank for the full amount requested. Defendants appealed.

The Court of Appeals *held:*

1. The trial court properly considered the amount of the mortgage held by Standard Federal in determining that plaintiff paid the true value of the property at the first sheriff's sale.

2. It was appropriate for plaintiff to deduct the amount of the back taxes from the appraised value to determine its bid since

REFERENCES

Am Jur 2d, Mortages §§ 852 *et seq.;* 905 *et seq.*

See the annotations in the Index to Annotations under Foreclosure; Mortgages.

plaintiff eventually would have to pay the back taxes in order to keep the property.

3. Defendant's contention that the trial court erred in awarding interest for the time between the foreclosure sale and the judgment because the foreclosure sale extinguished the mortgage and consequently the indebtedness is rejected. The debt is not extinguished where the security has been foreclosed if the security fails to satisfy the amount owing, and therefore the interest provided for in the promissory note continues to run.

Affirmed.

1. MORTGAGES — FORECLOSURES — SHERIFF'S SALE — PRIOR LIENS.

A purchaser of foreclosed property at a sheriff's sale takes the property subject to all prior liens (MCL 600.3236; MSA 27A.3236).

2. MORTGAGES — FORECLOSURES — DEFICIENCY JUDGMENTS — INTEREST.

A deficiency judgment is proper where the security for a loan fails to satisfy the amount owed, and the interest provided for in the promissory note continues to accrue on the amount of the deficiency until it is paid.

*Miller, Canfield, Paddock & Stone* (by *Leland D. Barringer* and *Alan R. Madry*), for plaintiff.

*Dennis E. Moffett,* for defendants.

Before: GRIBBS, P.J., and CYNAR and N. J. KAUFMAN,* JJ.

CYNAR, J. Defendants John Anthony Brown and Pamela A. Brown appeal as of right from a deficiency judgment entered against them in the amount of $35,649.23 plus interest.

In June, 1980, the Browns gave plaintiff First of America Bank-Oakland Macomb, N.A., a promissory note for $55,000, at fifteen percent annual interest. As security, the Browns gave the bank a second mortgage on their home. A senior mortgage

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

was held by Standard Federal Savings and Loan Association.

When the Browns failed to make any payments on the interest or principal, First of America foreclosed by advertisement. A sheriff's sale was held on December 16, 1983; as of that date, the Browns owed the bank $70,391.55 in principal and interest. The bank bid for and purchased the property for $34,742.32. The bank's bid was based on a $110,000 appraisal of the home minus the costs of the sale, the outstanding tax lien of $10,050.15 and the amount owing on the senior mortgage, which the bank believed to be $65,000.

Soon after the first sale, Standard Federal foreclosed on its senior mortgage. First of America found out then that the outstanding debt to Standard Federal was actually $81,821.74. By the time of the second sheriff's sale, the Browns owed Standard Federal $90,400. Standard Federal bid and purchased the property for $91,466.12. The property was later sold for $84,900.

The bank sued to recover the $35,649.23 deficiency on its promissory note,as well as $8,790.03 in interest through the day of trial, $14.65 per diem interest until entry of judgment, and the statutory thirteen percent thereafter. The only issue at trial was the appraised value of the property at the time of the bank's foreclosure sale. A licensed appraiser, Andrew J. Lindsey, testified that he evaluated the property both before and after the sale. Based upon an exterior view of the house, Lindsey valued the property at $110,000 in February, 1983. Following an interior and exterior examination in October, 1984, Lindsey revised his valuation to $90,000 "as is" and $98,300 repaired.

The Browns contested these figures. Mr. Brown testified in some detail as to improvements made on the property since 1980. Based on his knowl-

edge of the selling prices of comparable homes in the area, Brown estimated that the property was worth at least $150,000 in December, 1983.

The trial court granted judgment to the bank for the full amount requested. Defendants appeal as of right.

Defendants first contend that the trial court erred in considering the outstanding senior lien when determining "true value." A valid defense to a deficiency action can be maintained if the property involved was worth the amount of the debt or the amount bid was substantially less than the property's "true value." The statute at issue provides:

> When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after February 11, 1933, or shall be hereafter made by a mortgagee, trustee, or other person authorized to make the same pursuant to the power of sale contained therein, at which the mortgagee, payee or other holder of the obligation thereby secured has become or becomes the purchaser, or takes or has taken title thereto at such sale either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation, or any other person liable thereon, *it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and set-off to the extent only of the amount of the plaintiff's claim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value,* and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent. This section

shall not affect nor apply to the rights of other purchasers or of innocent third parties, nor shall it be held to affect or defeat the negotiability of any note, bond or other obligation secured by such mortgage, deed of trust or other instrument. Such proceedings, as aforesaid, shall in no way affect the title of the purchaser to the lands acquired by such purchase. This section shall not apply to foreclosure sales made pursuant to an order or decree of court nor to any judgment sought or rendered in any foreclosure suit nor to any chancery sale heretofore or hereafter made and confirmed. [Emphasis added. MCL 600.3280; MSA 27A.3280.]

In determining its bid for the December, 1983, sheriff's sale, plaintiff subtracted the balance of the outstanding first mortgage and the back taxes from the property's appraised value. The bank's consideration of the existing liens against the property was prudent. Under Michigan law a purchaser at a sheriff's sale takes the property subject to all prior liens. The applicable statute states in pertinent part:

[N]o person having any valid subsisting lien upon the mortgaged premises, or any part thereof, created before the lien of such [foreclosed] mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby. [MCL 600.3236; MSA 27A.3236.]

Thus, the bank would have to pay off the senior mortgage or, as actually happened, lose the land. No buyer would pay the full appraised amount for property knowing that a mortgage will have to be paid off in order to keep the land. We hold that the trial court properly considered the amount of the senior mortgage in determining that plaintiff paid the "true value" of the property.

Defendants further allege that the plaintiff should not have deducted the amount of the back taxes from the appraised value to determine its bid because plaintiff had not yet paid the taxes. We disagree. As with the senior mortgage, plaintiff eventually would have to pay the back taxes in order to keep the property, therefore, it was appropriate to subtract that amount from the purchase price.

Defendants' last contention is that the trial court erred in awarding interest for the time between the foreclosure sale and the judgment because, defendants believe, the foreclosure sale extinguished the mortgage and consequently the indebtedness. A mortgage, however, is merely security for the principal debt. *Ginsberg v Capitol City Wrecking Co,* 300 Mich 712; 2 NW2d 892 (1942). If the security fails to satisfy the amount owing, a deficiency judgment is proper. *Bankers Trust Co of Detroit v Rose,* 322 Mich 256; 33 NW2d 783 (1948). The debt is not extinguished because the security has been foreclosed, and therefore the interest provided for in the promissory note continues to run.

Affirmed.